IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Emmanuel J. Gardner,<br><br>       Plaintiff<br>  v.<br><br>Sean Janson, Nanada Nicole Middleton, Brian Antonelli, and Bureau of Prisons,<br><br>       Defendants. | C/A. No. 5:19-2616-CMC<br><br><br>Order Granting Defendants'<br>Motion for Summary Judgment<br>(ECF No. 68) |

Plaintiff Emmanuel J. Gardner ("Plaintiff") brings this *pro se* action alleging violations of his constitutional rights, as well as statutory violations, while incarcerated at Federal Correctional Institution ("FCI") Williamsburg. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), D.S.C., the matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings.

This matter is before the court on Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 68. Because Plaintiff is proceeding *pro se*, the Magistrate Judge entered an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising him of the importance of the motion and the need to file an adequate response. ECF No. 69. Plaintiff filed a response in opposition (ECF No. 71) and Defendants filed a reply (ECF No. 72).

On July 23, 2021, the Magistrate Judge issued a Report and Recommendation ("Report") recommending Defendants' motion for summary judgment be granted and the case dismissed. ECF No. 83. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff moved

for an extension, which was granted in part. Plaintiff has filed objections within this extended time frame. ECF No. 90. Defendants did not file objections or a reply to Plaintiff's objections.

### 1. Standard

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

### 2. Background[1]

Plaintiff asserts he is a member of and actively practices the Yoruba religion, a traditional African religion. ECF No. 58 at 4. While housed at FCI Williamsburg in November 2017, he alleges he submitted an inmate request form to Defendant Middleton for a Yoruba worship and study time separate from members of the Santeria faith group. *Id.* at 5. Plaintiff alleges he received no response to this request, so he submitted a second Informal Resolution on December 18, 2017,

---

[1] The facts are taken in the light favorable to the non-moving party, Plaintiff, where support is found in the record.

contending that requiring members of Yoruba and Santeria faiths to worship together was discriminatory. *Id.* Plaintiff alleges he met with Defendant Middleton in the Religious Service Department on December 25, 2017, and discussed his request and the reasons behind it. He contends Defendant Middleton told him services for the two faiths would not be separated. *Id.* at 6.[2]

Plaintiff was then asked to fill out a "New and Unfamiliar Religious Questionnaire" form because he was requesting a change to the current accommodation of an existing faith. Plaintiff maintains the Yoruba religion is not new or unfamiliar to the BOP, and other BOP institutions allow Yoruba and Santeria religions their own worship and study times. Plaintiff completed the New and Unfamiliar Religious Questionnaire and was later "placed on call-out for religious services." Defendant Middleton informed him she had formed a Religious Issue Committee ("RIC") to review his Questionnaire form, but it recommended denial of separation of Yoruba and Santeria faiths because such separation would disrupt the orderly operations of the institution. Defendant Antonelli, based on this recommendation, denied Plaintiff's request. During his meeting with Defendant Middleton, at which Defendant Johnson was also present, Plaintiff explained the response did not correlate with what he actually requested, as the Yoruba faith did not need a separate space in the chapel but could use an outside space in the recreation yard. Defendant Johnson then informed Plaintiff his request was denied because there were too few inmates practicing Yoruba at the institution for Religious Services to further accommodate them.

---

[2] Plaintiff appealed this administrative remedy through submission of BP-9, BP-10, and BP-11 forms, up to the BOP Central Office.

3

Plaintiff alleges Defendant Johnson did not form a committee or follow the procedures in T5360.02.[3]

Plaintiff maintains Defendant Middleton is still denying him an opportunity to practice his Yoruba faith. He claims this places a substantial burden on Plaintiff's exercise of religion in violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. He also claims this violates his equal protection and due process rights, and he is coerced into practicing Santeria in violation of the Establishment Clause and his First Amendment rights. He notes Defendants' actions create an excessive entanglement of government with religion. He seeks compensatory damages of $1,000 and $50,000 in punitive damages, and preliminary and permanent injunctions allowing Yoruba inmates at FCI Williamsburg separate worship and study time apart from members of the Santeria faith.

### 3. Discussion

The Magistrate Judge makes several recommendations in the Report. First, she recommends denial of Defendants' motion to dismiss based on failure to exhaust administrative

---

[3] Plaintiff alleges this is a BOP document outlining the procedures for "handling a New and Unfamiliar Religious Questionnaire Request form" and notes it is attached to his Amended Complaint at Exhibit E; however, there are no attachments or exhibits to the Amended Complaint. Defendants filed a Change Notice for Program Statement 5360.09 as an exhibit to their motion to dismiss, which discusses Religious Beliefs and Practices. ECF No. 68-1. This document does discuss the formation of a RIC. *Id.* at 9-10.

remedies. ECF No. 83. No Defendant has objected; therefore, the court has reviewed this portion of the Report for clear error and, finding none, adopts it.[4]

          a. *Official Capacity Claims*

Next, the Report recommends dismissal of all *Bivens* claims against Defendants in their official capacities, based on Eleventh Amendment immunity. *Id.* at 13. Plaintiff objects, noting Defendants are being sued in their official and individual capacities, and his official capacity claims against Defendants are not for monetary damages but for injunctive relief. ECF No. 90 at 3.

The court agrees Plaintiff may not bring claims for damages against federal agents in their official capacities. Plaintiff, however, may seek injunctive relief against a federal officer in his or her official capacity. *Saunders v. Johnson*, No. CV 1:16-10159, 2017 WL 9516556, at *6 (S.D.W. Va. July 24, 2017), report and recommendation adopted, No. CV 1:16-10159, 2017 WL 4310766 (S.D.W. Va. Sept. 28, 2017); *Everett v. Francis*, 2009 WL 2971359, *4 (N.D.W. Va. Sep. 16, 2009)("[T]he *Bivens* requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief."); *see also Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 452 n. 10 (4th Cir. 2004) (stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); *Community Mental Health Services of Belmont v. Mental Health & Recovery Bd.*, 150 F. Appx. 389, 401 (6th Cir. 2005) ("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the officials' job, i.e., his official

---

[4] Plaintiff's request for an injunction ordering the BOP to change its policy of rejecting an inmate's BP-10 as untimely if not received at the regional office within 20 days is moot, as Plaintiff's case is not being dismissed for failure to exhaust administrative remedies.

capacity."); *Singletary v. Fallen*, 2012 WL 368375 (D.S.C. Jan. 17, 2012) (finding that sovereign immunity does not protect federal officials from suit naming them in their official capacities when injunctive relief rather than damages is sought.).

The court therefore declines to adopt the Report on this point, and will not dismiss the official capacity claims for injunctive relief based on Eleventh Amendment immunity, but will evaluate the merits of each claim on which Plaintiff seeks injunctive relief.

### b. Damages Claims under Bivens

Plaintiff's constitutional claims for damages, including claims under the First Amendment and for equal protection and due process violations, are necessarily under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which allowed a private right of action against federal actors for damages. However, the Supreme Court has recognized *Bivens* claims in only three contexts: violations of the Fourth Amendment right to be free from unreasonable search and seizure when agents handcuffed a plaintiff in his own home without a warrant; gender discrimination against a Congressman for firing his female administrative assistant under the Fifth Amendment's Due Process clause; and failure to treat an inmate's serious medical condition under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Bivens*, 403 U.S. at 389; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980), respectively.

Recently, the Supreme Court has cautioned against extending *Bivens* beyond the parameters recognized by the Court, and clarified the analysis courts should perform in addressing damages claims in a new context. *Ziglar v. Abbasi*, 582 U.S. __, 137 S. Ct. 1843 (2017). If the case differs in a meaningful way from the *Bivens* cases previously decided by the Supreme Court, as detailed above, the context is new and the damages remedy under *Bivens* should not be expanded

if there are any "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 1857. Expanding the damages remedy under *Bivens* is now a "disfavored judicial activity." *Id.* The court's special factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. To be a special factor counseling hesitation, a factor must "cause a court to hesitate before answering that question in the affirmative." *Id.* "If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal court jurisdiction under Article III." *Id.* at 1858. If there is an alternative remedial structure present in a certain case, that alone can "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar,* 137 S. Ct at 1858; *see also Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021) (denying expansion of *Bivens* damages remedy when the plaintiff had full access to remedial mechanisms, including suits in federal court for injunctive relief and BOP grievance procedures).

i. First Amendment

Plaintiff has alleged a claim under the First Amendment, interference with his ability to practice his religion. However, the Supreme Court has determined on multiple occasions that a First Amendment claim is not cognizable under *Bivens*. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Bush v. Lucas*, 462 U.S. 367, 387-89 (1983) (declining to extend *Bivens* to a freedom of speech claim brought under the First Amendment); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (noting "while we have allowed a *Bivens* action to redress a violation of the equal protection component of the

7

Due Process clause of the Fifth Amendment, we have not found an implied damages remedy under the Free Exercise Clause. Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment."). The Fourth Circuit has also rejected *Bivens* remedies under the First Amendment. *See Earle*, 990 F.3d at 781 (declining to expand *Bivens* to include First Amendment retaliation claim); *Doe v. Meron*, 929 F.3d 153 (4th Cir. 2019) (declining to extend *Bivens* to include First Amendment "parentage and familiar relations" claim).

Here, the court finds special factors counsel hesitation. First, there are alternative remedies available to Plaintiff – he has utilized the BOP's administrative review procedure and brought claims in this very litigation for injunctive relief. In addition, Congress has provided an alternative process for protecting the free exercise of his religion through RFRA, and Plaintiff has also availed himself of this opportunity here (see below for analysis of the RFRA claim). Given this action by Congress, the court believes it likely Congress would not support the extension of *Bivens* to a free exercise claim such as the one alleged here. Considering these special factors, the court declines to extend the *Bivens* damages remedy to the First Amendment claim in the instant case.

####    ii. Fifth Amendment

Plaintiff also brings an Equal Protection and Due Process claim under the Fifth Amendment for religious discrimination against the inmates wishing to practice the Yoruba faith. As noted above, the Court has previously recognized an implied cause of action for damages for violations of equal protection under the Fifth Amendment's Due Process clause. Although the instant claim is under the same Amendment and clause, it presents a new context because it differs in a meaningful way from the previous *Bivens* case. The plaintiff in *Davis* was an administrative assistant who was fired by a Congressman, allegedly because of her gender. 442 U.S. at 230. The instant claim took place in a prison context, for which Congress has already provided substantial

governing legislation.  Further, *Ziglar* specifically noted several substantive and procedural due process cases in which the Supreme Court declined to create an implied damages remedy. *See Ziglar*, 137 S. Ct. at 1857 (including "a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671-672, 683-684, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473-474, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); . . . [and] a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547-548, 562, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007)."). Accordingly, the court will conduct a special factors analysis to determine whether *Bivens* should be extended to the instant Fifth Amendment claim.

The court again finds special factors counsel hesitation.  As noted above, Plaintiff has alternative remedies available, such as BOP's administrative review procedure and a claim for injunctive relief, analyzed below.  Further, Congress did not authorize a damages remedy under the Prison Litigation Reform Act of 1995, showing Congress did not intend for such a remedy to lie against BOP officials. Considering these special factors, the court declines to extend the *Bivens* damages remedy to the instant claim under the Fifth Amendment.

The claims for damages under *Bivens* are therefore dismissed.[5]

---

[5] Although the Report analyzed qualified immunity and supervisory liability in the context of Bivens claims, as *Ziglar* disallows Plaintiff's damages claims under *Bivens*, the issues of qualified immunity and supervisory liability are moot, and the court declines to adopt those portions of the Report.

*c. RFRA Claim*

The Magistrate Judge recommends dismissal of Plaintiff's RFRA claim because he has not made an initial showing that the challenged policy imposes a substantial burden on his religion. ECF No. 83 at 14. Plaintiff objects, asserting he has raised material facts to preclude summary judgment. ECF No. 90 at 5. Specifically, he argues he has not requested to change his religious preference to Santeria and any entry reflecting that in SENTRY "was done by Defendant Middleton on her own accord." *Id.* Plaintiff also contends Defendants did not form an RIC according to BOP policy, but instead "circumvent[ed] BOP policy to place and/or maintain a substantial burden to prohibit Plaintiff from practicing and exercising his religious belief and practices." *Id.* at 6. He asserts Santeria and Yoruba are different faiths because Santeria worships Catholic Saints while the Yoruba faith does not.[6] While Defendant Middleton averred Plaintiff was offered the opportunity to practice his faith as an individual practitioner, Plaintiff claims in his objections this is not true, and he would not have brought this lawsuit had he been given that option.

RFRA prohibits the Government from substantially burdening a person's exercise of religion even if the burden results from a rule of general applicability. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 682 (2014). The court must first examine whether Plaintiff has demonstrated a substantial burden on the exercise of his sincerely held religious beliefs, and then determine whether the government can justify the imposition of that burden. *See Goodall by Goodall v. Stafford Cty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995). "A substantial burden on

---

[6] To the extent Plaintiff argues "evidence is presented at trial not in a motion for summary judgment," that is an incorrect statement of the law, as explained in the *Roseboro* Order sent to Plaintiff after Defendants filed their Motion for Summary Judgment. ECF No. 69.

10

religious exercise occurs when a . . . government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). In other words, Plaintiff can show a substantial burden by demonstrating he was coerced into violating his religious beliefs or compelled to refrain from religiously motivated conduct under threat of sanctions. *See Woods v. Evatt,* 876 F. Supp. 756, 762 (D.S.C.), aff'd, 68 F.3d 463 (4th Cir. 1995). The burden must be more than mere inconvenience or a less desirable situation. *Id.*

Plaintiff objects to the Magistrate Judge's conclusion he has submitted no evidence supporting that Santeria and Yoruba faiths are substantially different. ECF No. 90 at 6. Plaintiff states the Santeria faith group participates in the worship of Catholic Saints, while the Yoruba faith group does not. The BOP asserts it identifies Santeria and Yoruba under the larger religious groups of Orisha Worshipers, for whom there are no required weekly rituals. ECF No. 68 at 7. The BOP's Chaplaincy Services manual on Inmate Beliefs and Practices explains the history of the Orisha Worshippers umbrella faith groups, describing how Yoruba and Santeria developed:

> The roots of Orisha worship rest in Southwestern African indigenous rituals of the Yoruba-speaking tribes of Nigeria and Benin. The rituals were brought to the Americas (the Caribbean region, specifically Cuba) by enslaved people in the late 18th and early 19th century. There, West African beliefs and practices were syncretized with the Spanish Roman Catholic practices of the majority. The reason for this syncretization is not fully known. Some believe this occurred as the Nigerians struggled to maintain their own beliefs without the knowledge of their captors. Others believe that this mixture of religions and cultures is a general characteristic of African indigenous religions – that is, the tendency in Africa to incorporate the new into the old leads to subsuming Catholic beliefs and practices into their own. This occurred with slight variations during the same period throughout the Spanish-speaking Caribbean colonies, thus accounting for slight variances in beliefs and practices.

*Id.* As to the practice of Orisha Worshippers, the Guide states:

11

> **Required Weekly Observances**. There are no required weekly rituals. However, if it is the practice of the Religious Services Department to accommodate requests for weekly worship and study, it would be appropriate to schedule a weekly community-based meeting of Orisha seekers/devotees and practitioners. Because the rituals reflect the cultures of the regions from which practitioners and seekers have descended, the practices, rituals, and customs vary even from household to household. . .
>
> In correctional facilities, worship or devotion dedicated to one or more particular Orishas are best observed by individuals. Scheduled group services are open to all, for the benefit of all Orisha worshipers, regardless of their particular religious and cultural differences based on their geographic and cultural origin. Seekers of various cultures may wish to participate in Orisha worship services and studies out of curiosity about the unknown, or about spiritist practices. While participation is encouraged, seekers or visitors must honor the traditions and practices of the practitioners and observe or participate respectfully, without imposing contrary practices or beliefs, or disrupting the services.

*Id.* Plaintiff has submitted a Wikipedia page about the Yoruba religion, which notes Yoruba spread around the globe and the "school of thought integrated into what now constitutes the core of the 'New World lineages,'" including Santeria as practiced in Cuba, Puerto Rico, and the Dominican Republic. ECF No. 71-2 at 33.

The court agrees with the Magistrate Judge Plaintiff has not demonstrated Defendants substantially burdened his right to exercise his religion.[7] The Supreme Court has noted "[a] special chapel or place of worship need not be provided for every faith regardless of size; . . . [b]ut reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405

---

[7] Plaintiff's Amended Complaint states he requested a separate space in which to worship, but this was denied because providing such a space would be a security concern for the institution. ECF No. 68-7. The RIC recommendation states Plaintiff requested a separate space in the Chapel to worship his Yoruba faith, but Plaintiff argues he merely requested a separate space, and could worship outside in the recreation yard.

12

U.S. 319, 322 n.2 (1972).  As explained by the Magistrate Judge, interfaith religious services have been found to be sufficient, "as long as there is a reasonable relationship between the service and the tenets of the subsidiary sects." *Kyles v. Atkinson*, No. 6:13-CV-02235-JMC, 2014 WL 4249878, at *10 (D.S.C. Aug. 26, 2014) (citing *Weir v. Nix*, 114 F.3d 817, 820–21 (8th Cir. 1997) (fact that Protestant minister conducted inclusive Protestant services, which were against inmate's exclusive beliefs, was not enough for the inmate to require a separate service, where the minister's beliefs mirrored the inmate's beliefs in all other respects); *Clifton v. Craig*, 924 F.2d 182, 184 (10th Cir. 1991) (no requirement that Church of Christ services be held separately when there are services for Christians); *Searcy v. Broome*, C.A. No. 6:07–cv–0154–GRA–WMC, 2007 WL 4443062, at *10 (D.S.C. Dec. 14, 2007) (failure to provide worship service for Mennonite inmates separate from the Christian service did not substantially burden inmate's religious exercise).  As a South Carolina District Court explained: "The rationale for these holdings is that 'the large number of religious groups represented in the prison population and such factors as security, staffing, and space' can make separate services for all groups logistically infeasible." *Kyles,* 2014 WL 4249878 at *11 (citing *Clifton*, 924 F.2d at 185).  Indeed, this is one reason Defendants determined FCI Williamsburg is unable to accommodate separate services or worship space for the Yoruba faith.  Further, though Plaintiff argues there is a significant difference between Santeria and Yoruba faiths, it appears there is a "reasonable relationship between the [Santeria] service and tenets of the subsidiary sect [of Yoruba]." *Kyles*, 2014 WL 4249878, at *10.  The court thus agrees with the Magistrate Judge Plaintiff has not demonstrated a substantial burden on his religious exercise.

The disputes of fact raised in Plaintiff's objections, regarding Plaintiff's SENTRY categorization or the RIC formation, are not material because they do not impact the determination of whether Plaintiff has established a substantial burden on his religious exercise.  Worshiping in

13

the same service as Santeria worshipers will not substantially burden Plaintiff's worship in his reasonably related Yoruba faith. Therefore, summary judgment is granted to Defendants on this cause of action, and Plaintiff's RFRA claim is dismissed with prejudice.

### d. First Amendment claim

The Magistrate Judge recommends granting summary judgment to Defendants on Plaintiff's First Amendment claim because Plaintiff has failed to demonstrate how the BOP policy placed a substantial burden on his ability to practice his religion. ECF No. 83 at 21. Plaintiff objects, arguing a substantial burden has been placed upon his ability to practice his Yoruba religion because he has lost benefits available to other prisoners because he followed his religious beliefs.[8] ECF No. 90 at 7. Plaintiff also asserts he had to modify his beliefs when made to practice with the Santeria religion because he does not worship the Catholic Saints, and Santeria does.

The Free Exercise clause of the First Amendment prohibits policies that impose a substantial burden on a prisoner's right to practice his religion. *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). Defendants place a substantial burden on a person's religious exercise when they put substantial pressure on an adherent to modify his behavior and to violate his beliefs. *Id.* (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). However, restrictions that are reasonably related to the achievement of a legitimate penological objective are permissible even if the policy substantially burdens a prisoner's religious practice. *Id.* at 169. A prison regulation is reasonable and therefore permissible if it satisfies the factors in *Turner v. Safley,* 482 U.S. 78, 89 (1987). *Id.* The *Turner* analysis considers the following factors: (1) whether there is a logical connection between the restriction and the governmental interests invoked to

---

[8] He has not, however, specified any benefits he has lost.

14

justify it; (2) the availability of alternative means to exercise the restricted right; (3) the impact that accommodation of the right might have on other inmates, on prison personnel, and on allocation of prison resources generally; and (4) whether there are "obvious, easy alternatives" to the policy that could be adopted at *de minimis* cost. *Turner,* 482 U.S. at 89–90.

The court agrees with the Report Plaintiff has not demonstrated Defendants have substantially burdened Plaintiff's right to practice his religion by failing to create a separate worship space and opportunity for the Yoruba religion. As noted above, Plaintiff has the opportunity to practice his religion with a reasonably related faith, Santeria. Further, even if the court assumed arguendo Plaintiff's religious practice was substantially burdened, the court finds the restriction nonetheless permissible under *Turner*. There is a logical connection between the restriction not to allow an additional religious service and the government interests invoked, namely, security, staffing, and space at the correctional institution. Plaintiff has alternative means to exercise his right to practice his Yoruba faith within the related Santeria worship, even without practicing the portions of the Santeria service to which he objects, or to practice individually, which Defendant Middleton has conceded Plaintiff is able to do.[9] Practicing his faith within the Santeria service or doing so individually are "obvious, easy alternative[s]" that could be adopted at little to no cost, and would have small, if any, impact on prison personnel, other inmates, or the allocation of prison resources. Indeed, a Santeria worship group currently exists at FCI Williamsburg. The court therefore finds the BOP's decision not to allow the Yoruba faith a

---

[9] Although Plaintiff denies he was offered the opportunity to practice individually, he has not informed the court why he cannot do so or what would be required in order for him to be able to do so.

separate worship service did not infringe Plaintiff's right to practice his religion, and his First Amendment claim is dismissed.

### e. Fifth Amendment Claim

A Fifth Amendment equal protection claim requires that a plaintiff "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To meet this requirement, Plaintiff is required to set forth "specific-non conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). If he makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 654). In a prison context, the level of scrutiny the regulation need survive is not strict scrutiny, but reasonableness. *See Washington v. Harper*, 494 U.S. 210, 223 (1990) (reasonableness standard applied whenever the needs of prison administration implicate constitutional rights); *Veney*, 293 F.3d at 732 ("When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner."). Even so, courts should remain cognizant of "the concerns that justify application of a heightened standard outside of the prison context." *Veney*, 293 F.3d at 732.

In assessing whether there exists any constitutionally relevant disparate treatment, it is important to note the Equal Protection Clause does not command identical treatment; the Constitution does not require that prison officials provide identical facilities, personnel, or opportunities for all religious sects. Instead, the Supreme Court has made clear that it is

constitutionally sufficient in the prison context for prison officials to provide inmates belonging to various religions a "reasonable opportunity," consistent with valid penological concerns, to practice their religion, and that this opportunity must be "comparable" to the opportunities afforded inmates belonging to mainstream religions. *Blagman v. White*, 112 F. Supp. 2d 534, 538 (E.D. Va. 2000), aff'd, 3 F. App'x 23 (4th Cir. 2001) (citing *Cruz,* 405 U.S. at 322).

The court finds Plaintiff's Equal Protection claim fails.  Plaintiff alleges Defendants denied the Yoruba inmates their own worship and study times, while allowing it for other "similarly situated religions."  ECF No. 58 at 13.  Although he alleges this was "intentionally discriminative [*sic*]," he does not allege "specific, non-conclusory factual allegations that establish improper motive." *Williams,* 326 F.3d at 584.  Further, even assuming *arguendo* Plaintiff had alleged an improper motive, the court finds the restriction of requiring Yoruba inmates to worship in the Santeria service reasonable when considering valid penological concerns.  Plaintiff has a "reasonable opportunity" to practice his religion, either within the Santeria service or individually.  Accordingly, Defendants are entitled to summary judgment on this claim, and it is dismissed with prejudice.

### f.  RLUIPA Claim

The Magistrate Judge recommends dismissal of Plaintiff's RLUIPA claim because the statute, 42 U.S.C. § 2000cc, applies only to state governments and state officials, and not to federal actors.  ECF No. 83 at 13.  Plaintiff does not object, and agrees this claim should be dismissed.  Finding no clear error, the court agrees, and summary judgment is granted to Defendants on this cause of action.

### 4. Conclusion

After a *de novo* review of the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court agrees with the Report's conclusion that Defendants' motion for summary judgment be granted. Accordingly, although the court declines to adopt certain sections of the Report as noted above, the court adopts the conclusion of the Report by reference in this Order, as supplemented above. For the reasons above, Defendants' motion for summary judgment (ECF No. 68) is hereby granted and Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
September 30, 2021